## THE BARBARA HERNSTER.

(Circuit Court of Appeals, Ninth Circuit. June 18, 1906.)

No. 1,278.

1. SEAMEN—WHALER UNDER LAY CONTRACT—VALIDITY OF RELEASE.

A seaman who shipped on a whaling voyage under a lay contract, but to whom no accounting was made by the owner of the vessel on the completion of the voyage, will not be held bound by a release given by him some time afterward, when greatly intoxicated. on the payment to him of an inadequate sum in settlement for his share of the catch.

[Ed. Note.—For cases in point, see vol. 43, Cent. Dig. Seamen, § 129.]

2. SAME—FAILURE OF SHIPOWNER TO DIVIDE PRODUCT OF VOYAGE—LIABILITY FOR VALUE OF SEAMAN'S SHARE.

Where the owner of a whaling vessel, on her return from a voyage on which libelant served as a seaman under a lay contract, shipped away the product taken without making a division, it thereby became liable to libelant for the reasonable value of his share.

[Ed. Note.—For cases in point, see vol. 43, Cent. Dig. Seamen, §§ 157–160.]

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington.

John P. Hartman, for appellants.

James Kiefer, for appellee.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

ROSS, Circuit Judge. The libelant, in the month of April, 1904, shipped from the port of Seattle, state of Washington, on board the schooner Barbara Hernster, on a whaling voyage to the Arctic Ocean, being hired . by the master and owner of the schooner as boat-steerer on the one sixty-fifth lay or share of what should be taken, as wages, and performed his duties during the voyage and until the return of the schooner to Seattle. At the time of the commencement of the voyage he received from the appellant $50 in cash, and while on board received for his own use from the slop chest slops of the value of $27.20, and on the completion of the voyage he received from the appellant the further sum of $50. It appears that during the voyage four whales were taken, and that the whalebone removed therefrom was brought to Seattle and amounted to from 7,500 to 8,000 pounds. It was then shipped East by the appellant, where a part of it was sold. The remainder of it had not been sold at the time of the filing of the libel. After the completion of the voyage the libelant demanded of the appellant an accounting, and received from the latter, as has been said, $50, in addition to the $50 received

by him at the commencement of the voyage, and the $27.20 worth of slops during the voyage, but no other or further accounting. He, however, continued to importune the appellant for money.

The answer of the claimant set up, among other things, in defense, that on the 18th day of October, 1904, the libelant came to its office and stated that he would release the vessel and the claimant from all further claims and demands on account of the contract and of the voyage, upon the payment to him of the sum of $100, which the claimant thereupon paid to the libelant, who thereupon executed the following paper:

"Received of the schooner Barbara Hernster the sum of one hundred and no/100 ($100.00) dollars, in full payment of all claims and accounts of any kind and every nature and kind against said schooner Barbara Hernster, her charterers, owners and master, from the beginning of the world to this the 18th day of October, 1904, and particularly for all claims and demands on account of whalebone or other products taken during the voyage of said schooner Barbara Hernster, during the season of 1904.

"James Timmous.

"Witness to signature: O. B. Woolley."

On the trial testimony was given on behalf of the libelant tending to show that, at the time he demanded and received the $100 and executed the foregoing paper, he was too much intoxicated to know what he was doing, and there was testimony on the part of the claimant tending to show that, although the libelant was at the time intoxicated, such was his normal condition, and that the libelant understood his action in the respect under consideration as well as any of his other acts. The court below found, from the evidence, the value of the libelant's share of the whalebone to be $460, after making due allowance for all expenses and shrinkage, and held that as the claimant did not divide the commodity, but sent it away to market, there existed an implied obligation on its part to pay the libelant his proportionate share of the value. It appears from the testimony of witnesses on the part of the claimant that only a part of the whalebone had been sold at the time of the trial, but exactly how much the claimant did not disclose, although its employés were questioned in respect to that matter. Some of them testified that the bone had been shipped to New Bedford, Mass., and that New Bedford was the general and only market for whalebone. They further testified that the whole of the bone had not been sold, although they had endeavored to dispose of it, but that the market was not satisfactory.

We are of the opinion that the court below was right in not holding the libelant bound by the release executed by him. The law has always looked with extreme care into such settlements made with seamen, and will not sustain them where it appears that advantage was taken of their circumstances and condition. In this case it appears that the libelant was very much intoxicated at the time of offering to take the $100 in full payment of his interest in the bone, and at the time of executing the release relied upon by the claimant. The claimant, in answer to his demand for an accounting, at no time informed the libelant of the amount of the bone it had sold, or the amount remaining unsold. Nor does it appear that there was any understand-

ing or agreement concerning the shipment and sale of the bone by the claimant. The maritime law contemplates that seamen should be promptly paid and not required to remain on shore indefinitely for their earnings.

We agree with the court below that, the claimant not having divided the commodity, but having, instead, sent it away to market, there is an implied obligation on its part to pay the libelant his proportionate share of the value; and such was the effect of the decisions of Judge Hoffman in the cases of The Hunter (D. C.) 47 Fed. 744, and The Cape Horn Pigeon (D. C.) 49 Fed. 164.

The judgment is affirmed.

NOTE.—The following is the opinion of Hanford, District Judge, on the merits:

HANFORD, District Judge. There is no basis either in the pleadings or the evidence for the argument made in behalf of the respondent that the contract of employment upon which this suit is founded constituted a partnership. The libelant was hired as a seaman, and it was agreed that for his compensation he should receive a share of the product of the voyage. A reasonable estimate of the value of his share is $460, after making due allowance for all subtractions on account of expenses and shrinkage. As the respondent did not divide the commodity, and did send it away to market, there is an implied obligation to pay the libelant his proportionate share of the value. An agreement to accept part of a debt as payment in full is not a bar to a suit to recover the balance, because there is no consideration to support such an agreement. An attempt to extinguish a debt in that manner differs materially from an adjustment of differences and payment of the full amount which a debtor and creditor by agreement have made the true amount of the balance due from one to the other. When a sailor at the termination of a voyage or period of service signs clear of a ship upon receiving the amount of wages which at the contract rate is the true amount earned, after deducting set-offs which he has agreed to, the transaction is not subject to be impeached, except on the grounds of mutual mistake, or fraud, or duress, or legal disability of one of the parties to bind himself by a contract. There is no such a settlement between the libelant and the respondent alleged or proved in this case, and it is my opinion that there is no valid defense.

For the above reasons, I direct that a decree be entered in favor of the libelant for the difference between the amount paid him on the contract, and $460, with interest at 6 per cent. from the date of the commencement of this suit, and costs.